Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| JOSÉ WILLIAM LAMBOY LAMBOY<br><br>Recurrida<br><br>v.<br><br>FIRST BANCORP. PUERTO RICO *h/n/c* FIRST BANK PUERTO RICO Y OTROS<br><br>Peticionaria | KLCE202500454 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente)<br><br>Caso Núm. SJ2021CV06060 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de mayo de 2025.

La parte peticionaria, First Bank Puerto Rico, comparece ante nos para que revoquemos la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala de Bayamón, el 16 de enero de 2025.

Mediante la misma, el foro primario declaró *No Ha Lugar* una solicitud de sentencia sumaria promovida por la entidad compareciente, ello dentro de una acción sobre incumplimiento de contrato y daños y perjuicios incoada en su contra por la parte aquí recurrida, el señor José William Lamboy Lamboy, y su esposa, la señora Socorro Margarita González Díaz.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

**I**

El 20 de septiembre de 2021, la parte recurrida presentó la demanda de epígrafe, pliego que posteriormente enmendó. En síntesis, alegó que, el 4 de mayo de 2001, suscribió

un Pagaré Hipotecario, mediante el cual se obligó al pago de una suma principal de noventa y cinco mil dólares ($95,000.00), más intereses a razón de 7.125% anual a favor de la extinta institución Santander Mortgage Corporation (Santander Mortgage). Conforme indicó, en igual fecha, y mediante el instrumento público correspondiente, los recurridos garantizaron el cumplimiento de la referida obligación, constituyendo una hipoteca sobre un inmueble de su propiedad, sita en el Barrio Los Frailes de Guaynabo. (Hipoteca del año 2001). Sostuvo que, posteriormente, el 31 de julio de 2003, refinanció el préstamo hipotecario mediante la emisión de un nuevo Pagaré a favor de la misma institución por la cantidad de noventa y seis mil dólares ($96,000.00), sujeto a un interés del 5 ½% anual. El nuevo Pagaré quedó garantizado mediante el instrumento público correspondiente constituyendo así una hipoteca sobre el inmueble antes descrito. (Hipoteca del año 2003). A su vez, la parte recurrida afirmó que, como parte de la transacción de refinanciamiento, Santander Mortgage se obligó contractualmente a cancelar el Pagaré suscrito en el año 2001.

Así las cosas, en el año 2020, la parte recurrida decidió vender la propiedad hipotecada y otorgó un contrato de opción de compraventa con la señora Elizabeth Guell Marín. Por ello, inició el proceso de entrega de la referida propiedad, el cual conllevó su desalojo. Como parte de los trámites inherentes a la nueva transacción, RF Mortgage & Investment, solicitó un estudio de título y detectó que la hipoteca constituida el 4 de mayo de 2001 aún figuraba como gravamen en el Registro de la Propiedad. Ante tal situación, RF Mortgage & Investment denegó el financiamiento solicitado por la señora Guell Marín.

La parte recurrida esbozó que emprendió gestiones para localizar el Pagaré relacionado, sin éxito. En particular, indicó que luego de indagar con varias instituciones bancarias, logró identificar

que First Bank era actualmente el tenedor del Pagaré en cuestión. Sin embargo, la referida entidad bancaria le indicó que el expediente del aludido cierre hipotecario se encontraba incompleto, ya que del mismo no se desprendía el mencionado Pagaré. Según sostuvo, realizó innumerables gestiones adicionales con First Bank para poder obtener información sobre el paradero del Pagaré, sin embargo, fueron infructuosas.

Al amparo de lo anterior, la parte recurrida afirmó que el incumplimiento de las obligaciones contractuales de la parte peticionaria respecto a la tramitación de la cancelación de la Hipoteca del año 2001, constituidos sobre su inmueble, unida a la negligencia desplegada en la ejecución de sus deberes como institución financiera, redundó en impedirles completar la venta de su propiedad. De este modo, y tras sostener que todo lo acontecido les ocasionó severos daños económicos y angustias mentales, solicitaron al tribunal primario que declarara *Ha Lugar* su demanda y proveyera una compensación a su favor de cincuenta mil dólares ($50,000.00), y por el alegado incumplimiento contractual, una suma por igual cantidad.

Luego de varios incidentes procesales, el 26 de noviembre de 2021, la parte peticionaria presentó su *Contestación a Demanda*. En el pliego, negó las alegaciones formuladas en su contra y afirmó haber cumplido con todas las obligaciones contractuales pactadas con la parte recurrida. Sostuvo que, según surge de la Escritura de Hipoteca suscrita en el año 2003, recayó en la parte recurrida la obligación de gestionar la cancelación del gravamen hipotecario constituido el 4 de mayo de 2001. A la luz de ello, la parte peticionaria solicitó al Tribunal de Primera Instancia que, cumplidos los trámites de rigor, declarara *No Ha Lugar* la demanda y ordenara a la parte recurrida el pago de costas y honorarios de abogado en los que tuvo que incurrir por alegada temeridad.

Acontecidas múltiples incidencias no pertinentes a la controversia que nos ocupa, el 29 de agosto de 2023, la parte recurrida presentó una *Demanda Enmendada*. En el pliego, se sustituyó al señor Lamboy Lamboy por su Sucesión, como parte demandante, y se modificó la cuantía reclamada a veinte y cinco mil dólares ($25,000.00) por los daños ocasionados por el alegado incumplimiento contractual. Asimismo, solicitó veinte y cinco mil dólares ($25,000.00) adicionales por los daños mentales, morales y emocionales mencionados en la demanda original. En cuanto a los honorarios de abogado, no especificó una cantidad determinada, limitándose a reclamar una suma razonable.

Tras los procesos de rigor, el 20 de noviembre de 2023, First Bank presentó una *Solicitud de Sentencia Sumaria.*[1] En el pliego, esbozó ocho (8) hechos materiales respecto a los cuales alegó que no existía controversia. A su vez, reiteró que la obligación de cancelar la Hipoteca suscrita en el año 2001 recaía exclusivamente en la parte recurrida, y no en First Bank, por lo que sostuvo que no podía imputársele conducta negligente que diera lugar a los daños alegados por la parte recurrida. Asimismo, argumentó que, según surge de las constancias del Registro de la Propiedad, la Escritura de Cancelación de Hipoteca en Garantía del Pagaré del año 2001 había sido presentada el 1 de diciembre de 2021 e inscrita el 4 de enero de 2022. En vista de ello, alegó que durante el trámite judicial ocurrieron cambios que tornaron el caso académico y no justiciable. Consecuente, argumentó que, ante la ausencia de controversias de hechos materiales y justiciables, solicitaba que el foro primario dictara sentencia sumaria, desestimando, con perjuicio, la totalidad de la *Demanda Enmendada*, presentada en su contra.

---

[1] La parte peticionaria acompañó su *Moción de Sentencia Sumaria* con la siguiente prueba documental: Pagaré suscrito el 4 de mayo de 2001; Primera Hipoteca del 4 de mayo de 2001; Pagaré suscrito el 31 de julio de 2003; Primera Hipoteca del 31 de julio de 2003; Escritura de Cancelación de Hipoteca presentada el 1 de diciembre de 2021, inscrito en el Registro de la Propiedad el 4 de enero de 2022.

El 12 de febrero de 2024, la parte recurrida presentó una *Oposición a Sentencia Sumaria.*[2] En específico, alegó que, al efectuarse el cierre hipotecario del año 2003, Santander Mortgage contrató a los abogados de la firma Fiddler, González y Rodríguez para que llevaran a cabo la cancelación del Pagaré suscrito el 4 de mayo de 2001. Afirmó que, en ese acto, Santander Mortgage retuvo los fondos correspondientes para cubrir los costos asociados a la cancelación, incluyendo los gastos de presentación en el Registro de la Propiedad. La parte recurrida adujo que, en ningún momento posterior al otorgamiento de la Escritura del año 2003, Santander Mortgage le entregó el Pagaré del año 2001 para su cancelación. En cuanto a First Bank, esbozó que, durante el año 2020, la entidad adquirió los activos corporativos de Santander Mortgage, asumiendo así toda responsabilidad sobre los mismos. Así, la parte recurrida se reafirmó en que, en virtud de dicha transacción, First Bank era responsable por los daños alegados en la *Demanda Enmendada,* resultantes de la conducta negligente imputada. Dada la presunta existencia de controversias sobre hechos materiales en el caso, según lo alegado en el pliego, solicitaron al foro primario que declarara sin lugar en todas sus partes la *Solicitud de Sentencia Sumaria* presentada por la parte peticionaria.

Evaluadas las posturas de las partes, incluyendo una *Réplica a Oposición a Solicitud de Sentencia Sumaria,* el 16 de enero de 2025, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa. En la misma, declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria,*

---

[2] La parte recurrida, acompañó su *Oposición a Moción de Sentencia Sumaria* con la siguiente prueba documental: Estudio de Título del 17 de febrero de 2021, mediante el cual aparece la Hipoteca del 4 de mayo de 2001; Declaración Jurada de la señora Socorro Margarita González Díaz; Gastos de Cierre de Hipoteca del 4 de mayo de 2001; Gastos de Cierre de Hipoteca del 31 de julio de 2003, del cual se desprende que Santander Mortgage le cobró, tanto los honorarios, como los sellos de presentación para gestionar la correspondiente cancelación de Hipoteca del 2001; Copia Certificada de la Escritura de Cancelación de Hipoteca en Garantía de Pagaré del 6 de noviembre de 2003.

por entender que existían controversias de hechos sobre las cuestiones en litigio que impedían su disposición sumaria.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 25 de abril de 2025, el peticionario compareció ante nos mediante el presente recurso de *certiorari.* En el mismo, formula los siguientes planteamientos:

> Erró el TPI en su apreciación de la prueba y aplicación de la Regla 36 de Procedimiento Civil al determinar que existen controversias que ameritan celebrar un juicio en su fondo con relación a una causa de acción sobre incumplimiento de contrato, a pesar de determinar que no existe controversia sobre el hecho de que el Banco no asumió la obligación contractual que se le imputa haber incumplido.

> Erró el TPI en su apreciación de la prueba al concluir que no existe controversia sobre el hecho de que luego del cierre del préstamo del 2003, Santander Mortgage retuvo el Pagaré del 2001 para su cancelación, a pesar de que la prueba en autos confirma que, para esa fecha, Santander Mortgage no era el tenedor del referido Pagaré del 2001.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

**II**

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, expresamente delimita la intervención de este Tribunal para evitar la revisión judicial de aquellas órdenes o resoluciones que dilatan innecesariamente el curso de los procesos. *Rivera v. Joe's European Shop*, 183 DPR 580, 594 (2011). En lo pertinente, la referida disposición reza como sigue:

> . . . . . . . .
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o **de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de

testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

. . . . . . . .

32 LPRA Ap. V, R. 52.1. [Énfasis nuestro].

El entendido doctrinal vigente de la precitada disposición establece que, su inserción en nuestro esquema procesal, aun cuando obedece al propósito de delimitar las circunstancias en las que el foro intermedio habrá de intervenir con resoluciones u órdenes interlocutorias emitidas por el tribunal primario, asegura la revisión apelativa, mediante el recurso de *certiorari*, en situaciones meritorias constitutivas de excepción. *Job Connection Center v. Sups. Econo,* 185 DPR 585, 593 (2012).

Por su parte, sabido es que el recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Mediante la presentación de un recurso de *certiorari* se pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso que atienden. Distinto al ejercicio de sus funciones respecto a un recurso de apelación, el tribunal al que se recurre mediante el vehículo procesal del recurso de *certiorari* tiene discreción para atender el asunto planteado, ya sea expedir el auto solicitado o denegarlo. *800 Ponce de León v. AIG,* supra; *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005).

La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

*BPPR v. SLG Gómez-López, et al.,* 213 DPR 314, 337 (2023).

Ahora bien, la correcta consecución de la justicia necesariamente conlleva reconocer a los juzgadores de los foros primarios un amplio margen de deferencia respecto al ejercicio de sus facultades adjudicativas dentro del proceso que dirigen. De ordinario, el criterio judicial empleado en el manejo de un caso al emitir pronunciamientos de carácter interlocutorio está revestido de gran autoridad. De ahí la premisa normativa que califica la tramitación de los asuntos en el tribunal primario como una inherentemente discrecional del juez. Siendo así, y sin apartarse de los preceptos pertinentes al funcionamiento del sistema judicial, el adjudicador concernido está plenamente facultado para conducir el proceso que atiende conforme le dicte su buen juicio y discernimiento, siempre al amparo del derecho aplicable. *In re*

*Collazo I,* 159 DPR 141, 150 (2003). Cónsono con ello, sabido es que los tribunales apelativos no "deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Por otra parte, sabido es que la sentencia sumaria es un mecanismo adjudicativo de naturaleza extraordinaria, sujeta a determinadas formalidades impuestas por ley, que propende a la celeridad en la disposición de los asuntos sometidos a la consideración de la maquinaria judicial. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1024 (2020); *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *Savary et al. v. Mun. Fajardo et al.,* 198 DPR 1014, 1030 (2017); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). La legitimidad de su empleo está supeditada a la efectiva inexistencia de controversia alguna sobre los hechos medulares de la causa de acción de que trate, ello a la luz de la prueba documental sometida a la consideración del Juzgador por parte de quien propone la moción correspondiente, así como de quien se opone a la misma. Por tanto, compete al tribunal examinar toda la evidencia habida ante sí, de modo tal que pueda concluir que solo resta disponer de cuestiones puramente normativas. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004); *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617-618 (1990). Ahora bien, dictar sentencia sumaria en un caso es una facultad propia a la discreción del adjudicador, a los fines de evitar que se prive a una persona de su derecho a tener su día en corte. *Ramos Pérez v. Univisión,* supra, pág. 216; *Roig Com. Bank v. Rosario Cirino,* supra, pág. 617. Así, de no quedar clara la total inexistencia de controversias de hechos materiales, el foro *a*

*quo* está llamado a no preterir el cauce ordinario de los procedimientos. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3.

**III**

Tras entender sobre el recurso de autos, ello a la luz de lo estatuido en la precitada Regla 52.1 de Procedimiento Civil, *supra*, se desprende que el mismo está inmerso en las instancias contempladas por el legislador, a los fines de que este Foro pueda entender sobre un recurso de *certiorari.* Sin embargo, un examen detallado de los documentos que componen el expediente que nos ocupa, nos lleva a abstenernos de ejercer nuestras funciones revisoras respecto al pronunciamiento emitido por el tribunal primario.

En esencia, la parte peticionaria aduce que erró el Tribunal de Primera Instancia al denegar la solicitud de sentencia sumaria, bajo el argumento de que no existía controversia sobre la obligación contractual asumida por la parte recurrida en la Escritura. Así como que Santander Mortgage no era el tenedor del Pagaré en controversia, por lo que no podía imputársele incumplimiento alguno.

En su gestión, la sala de origen resolvió que controversias sustanciales de hechos requerían disponer del asunto mediante el cauce ordinario de los procedimientos, ello a fin de poder declarar adecuadamente de los respectivos derechos y obligaciones de las aquí comparecientes a la luz de los acuerdos de las Escrituras en disputa.

Al entender sobre la totalidad de los documentos que componen el expediente de autos, no advertimos ningún criterio jurídico particular que justifique dejar sin efecto la determinación recurrida. Nada nos sugiere que, en el ejercicio de sus facultades, el Juez del foro de origen haya incurrido en error o en abuso de la

discreción que le asiste, de modo que se haga meritorio que soslayemos la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones. A nuestro juicio, el pronunciamiento en cuestión es producto del adecuado ejercicio de las facultades que le asisten al ilustrado Juzgador de Primera Instancia en la materia que atendemos, por lo que, ante ello, no resulta preciso que intervengamos. Por tanto, en virtud de lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos no expedir el auto que nos ocupa.

**IV**

Por los fundamentos que anteceden, se deniega la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones